IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PORTUS SINGAPORE PTE LTD<br>& PORTUS PTY LTD,<br>    Plaintiff, | Civil Action No. 4:26-cv-00690 |
| v. | |
| LENOVO (UNITED STATES) INC.,<br>    Defendant | JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of at least claim 57 of U.S. Patent No. 8,914,526 (the "'526 patent" or the "Patent-in-Suit") by Defendant Lenovo (United States) Inc. ("Lenovo" or "Defendant") during the enforceable term of the Patent-in-Suit and within the applicable damages period. Plaintiff does not assert any other patent in this action.

**I. THE PARTIES**

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Lenovo (United States) Inc. is a corporation organized and existing under the laws of the State of Delaware. Defendant maintains a regular and established place of business in the Northern District of Texas, including at least 4801 Westport Pkwy, Fort Worth, Texas 76177-3201. On information and belief, Lenovo's own

website identifies Fort Worth, Texas as a location of operations. On information and belief, the Fort Worth location is associated with Lenovo and/or Lenovo's Motorola/mobile-device operations, including sales, service, support, mobile-device, smart-device, logistics, administrative, customer-support, connected-device, and/or commercial operations for Lenovo products and services in Texas. On information and belief, Defendant sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Defendant can be served through its Delaware registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801; at Defendant's Fort Worth place of business in this District; or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, supports, configures, and/or promotes infringing products, applications, cloud-connected systems, account systems, smart-home products, smart displays, Google Assistant-enabled displays, Lenovo Smart Display products, Lenovo Smart Display 7 products, Lenovo Smart Clock products, Google Home compatible systems, Google Home applications and setup flows, Google Assistant smart-home control systems, device-registration systems, remote-access servers and web services, smart-home dashboards, camera-display systems, smart-home command hubs, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et

seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during the enforceable term of the Patent-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Northern District of Texas has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of Texas.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

8. Defendant has committed acts of infringement within this District and the State of Texas by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Lenovo Smart Display products, Lenovo Smart Display 7 products, Google Assistant-enabled smart displays, smart-home command-hub functionality, Google Home app setup and control functionality, Google Assistant smart-home interfaces, cloud/account and authentication services, device-registration systems, remote-access servers and web services, smart-home cameras, lights, thermostats, speakers, switches, plugs, appliances, routines, dashboards, device-status screens, voice-command interfaces, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and

within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Texas and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Texas.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Fort Worth, Texas, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated under the laws of Delaware and therefore does not reside in Texas for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 4801 Westport Pkwy, Fort Worth, Texas 76177-3201. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENT-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff asserts only the '526 patent in this action. Plaintiff does not seek

4

injunctive relief or damages for any alleged infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. Portus owns the entire right, title, and interest in and to the Patent-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable term of the Patent-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patent-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patent-in-Suit during its enforceable term.

15. The Patent-in-Suit is presumed valid under 35 U.S.C. § 282 and claims patent-eligible subject matter.

## IV. TECHNOLOGY OF THE PATENT-IN-SUIT

16. The '526 patent is directed to specific technological solutions for local and remote monitoring and control of user-premises systems through standard browser-access and external network architectures. The '526 patent explains that users of advanced automation, security, smart-home, display-control, camera-control, thermostat-control, lighting-control, appliance-control, speaker-control, voice-assistant-control, access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56.

17. The specification identifies concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual

5

connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8. The patents further identify surveillance, alarm-data, access-control, premises-control, and remote interrogation problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote monitoring through a standard, location-independent interface. Ex. A, 2:9-31.

18. The claimed invention is not the abstract idea of remote monitoring, smart-home control, voice-assistant control, camera display, thermostat control, lighting control, home automation, security control, access control, or presenting information. The asserted claim recites particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. *See, e.g.*, Ex. A, claim 57.

19. The specification describes concrete architectures that improve computer-network functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. *Id*.

20. The claimed arrangement provides technical benefits and non-conventional features, including separating the external network and communications server from user-premises

networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57.

21. The '526 patent further discloses concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6.

22. The '526 patent therefore claims specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a generic business practice on a computer. The asserted claim is directed to particular network architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

23. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Lenovo Smart Display products, Lenovo Smart Display 7 products, Lenovo Smart Clock and Smart Clock Essential products to the extent they provide substantially similar Google Assistant smart-home control functionality, Google Assistant-enabled Lenovo smart displays and smart-home command hubs, Google Home compatible systems, Google Home application setup and control workflows, Google Assistant

cloud/account and authorization systems, authentication systems, device-registration systems, remote-access servers and web servers, camera-display systems, smart-home dashboards, connected-device lists, home-control user interfaces, voice/touch control interfaces, routines, media-control interfaces, smart cameras, lights, thermostats, switches, plugs, speakers, appliances, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable term of the Patent-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable term of the Patent-in-Suit and within the applicable damages period.

24. The Accused Instrumentalities include at least one accused instrumentality group: Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems, including Lenovo Smart Display products, Lenovo Smart Display 7 products, Google Assistant-enabled Lenovo smart displays, Google Home app setup flows, Google account, authentication, authorization, notification, device-registration, remote-access, and support services, and connected smart-home devices such as cameras, lights, thermostats, plugs, switches, speakers, appliances, routines, dashboards, and other home-control devices. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent.

**A. Lenovo Smart Display, Google Assistant, Google Home, Cloud, and Smart-Home Remote-Access Systems - '526 Patent**

25. Lenovo provides and supports Lenovo Smart Display products, Lenovo Smart Display 7 products, Google Assistant-enabled Lenovo smart displays, Google Home setup and

control functionality, smart-home dashboards, voice/touch interfaces, connected-device lists, camera-display functionality, routines, and related cloud remote-access systems deployed at user premises and connected to Google Home and Google Assistant services for remote monitoring and/or control. Exhibit B identifies the accused system as including a smart display deployed within a home or user premises and connected to Google Home services for remote monitoring/control of smart-home devices, and further identifies Lenovo Smart Display as a command hub for connected smart-home devices, including lighting, heating, cameras, and other devices controlled by voice or touch. Ex. B at 1-5.

26. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as Google Home cloud services located external to the user premises; the first arrangement of processing circuitry as cloud processing circuitry programmed to manage accounts, device registration, device-state synchronization, remote access, and smart-home command routing; the user access browser device as smartphones, tablets, computers, Google Home app clients, web-browser accessible Google Home resources, and/or Lenovo Smart Display user interfaces running or accessing Google Home, Google Assistant, and related access-browser functionality; and the second arrangements of processing circuitry as Lenovo Smart Displays, smart-home devices, smart cameras, lights, thermostats, plugs, switches, speakers, appliances, and related local-premises devices deployed in respective user premises networks. Ex. B at 1-8.

27. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that

9

controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Ex. B at 1-9.

28. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems practice limitation [57C] because Google Home cloud services, Google Assistant backend services, Lenovo Smart Display setup and account workflows, and related cloud services are adapted by programming to initiate or cause the establishment of network connections with selected Lenovo Smart Displays, smart cameras, lights, thermostats, plugs, switches, speakers, appliances, and other premises devices when an authorized user logs in, registers an account, pairs or selects a display or smart-home device, sends a voice or touch command, asks to view a camera feed, adjusts a light, changes a thermostat, creates a routine, or requests device information using the Google Home application, Google Assistant, web services, or Lenovo Smart Display interface. Ex. B at 5-11.

29. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems practice limitation [57D] because the Google Home app, Google Assistant cloud interfaces, web services, smart-display interfaces, and related remote-access functionality operate as access-browser functionality for locating and examining information on the external first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, authenticated web services, app screens, display screens, device-selection cards, routines, camera-viewing screens, smart-home dashboards, and user selections that cause the client to access cloud resources and corresponding smart-home and premises-device information. Ex. B at 2-12.

30. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home

remote-access systems practice limitations [57E] and [57F] because the first circuitry arrangement receives authentication and/or authorization data from the user device, including Google account credentials, app-login information, two-step verification data, device-registration data, Lenovo Smart Display identifiers, home/location identifiers, device identifiers, authorization tokens, session credentials, and/or user permissions, and uses that data to determine which premises network, smart display, camera, light, thermostat, plug, switch, speaker, appliance, or other local networked component the user is authorized to access. Ex. B at 3-10.

31. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems practice limitations [57G] and [57H] because the external first network is configured to create a communications session between the authorized user access device and the selected second arrangement of processing circuitry at the user premises, including the Lenovo Smart Display and associated local network components, and because the selected local-premises processing circuitry provides selected information concerning the user premises network and connected smart-home devices. Ex. B at 7-12.

32. The Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems practice limitations [57I] and [57J] because the first circuitry arrangement serves the selected information to the user access browser device and makes available information and controls for connected smart-home devices, including cameras, lights, thermostats, switches, plugs, speakers, appliances, device statuses, routines, voice/touch commands, camera feeds, and dashboards, including information regarding user-premises network components identified and selected using the Google Home app, Google Assistant, Lenovo Smart Display interfaces, account services, and/or related cloud services. Ex. B at 8-14.

33. To the extent Lenovo might contend that Google, the user, installer, mobile device,

11

computer, local router, Lenovo Smart Display, Google Home application, Google Assistant cloud component, smart camera, light, thermostat, plug, switch, speaker, appliance, third-party integration, or other premises component performs a step that Lenovo itself does not physically perform, the allegations nevertheless support direct infringement by Lenovo because Lenovo makes, uses, provides, operates, maintains, supports, and commercially controls the accused Lenovo Smart Display and Google Assistant-enabled smart-home ecosystem; conditions participation in the accused remote-access system on Lenovo-prescribed product setup, Google Home registration, authentication, account creation, device pairing, installation, configuration, app use, voice/touch command workflows, and compliance with technical requirements built into or required by Lenovo's accused products; and establishes or benefits from the manner and timing by which users, displays, smart-home devices, cloud components, and Google Home/Google Assistant components interact with the accused system. Lenovo receives the benefit of those acts because they enable Defendant to provide, sell, support, and monetize smart-display products, Google Assistant compatibility, smart-home control, customer support, device compatibility, and connected-premises functionality. Ex. B at 1-14.

## VI. INFRINGEMENT OF U.S. PATENT NO. 8,914,526

34. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

35. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 57 of the '526 patent by making, using, selling, offering to sell, importing, providing, operating, and/or supporting the Accused Instrumentalities during the enforceable term of the '526 patent and within the applicable damages period, including the Lenovo Smart Display, Google Assistant, Google Home, cloud, and smart-home remote-access systems described above

and in Exhibit B.

36. Defendant's infringement of the '526 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '526 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

37. Plaintiff does not seek injunctive relief or damages for infringement occurring after expiration of the '526 patent.

## VII. CONDITIONS PRECEDENT

38. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

39. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patent-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will

limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

40. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patent-in-Suit and/or that Plaintiff has substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

41. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

42. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for

14

each prior settlement license.

43. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

44. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patent-in-Suit.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

a. Enter judgment that Defendant has infringed one or more claims of the Patent-in-Suit during the enforceable term of the Patent-in-Suit;

b. Award Plaintiff damages adequate to compensate for Defendant's infringement during the enforceable term of the Patent-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations;

c. Award Plaintiff supplemental damages for any continuing damages period occurring before expiration of the asserted patent right and before final judgment, to the extent permitted by law;

d. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, expenses, and costs to the extent permitted by law;

e. Award Plaintiff such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 5, 2026                    Respectfully submitted,

**Ramey LLP**

By: */s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

*Attorneys for Portus Singapore PTE Ltd & Portus PTY Ltd*

16